# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACIE A. KAHRMANN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-12-112-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Stacie A. Kahrmann requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 20, 1958, and was fifty-two years old at the time of the administrative hearing (Tr. 29). She has a tenth grade education (Tr. 29). The claimant has past relevant work experience as a billing clerk, collections clerk, fast food cook, and receptionist (Tr. 22). The claimant alleges that she has been unable to work since July 31, 2009 because of bipolar disorder, depression, anxiety, and panic attacks (Tr. 138).

**Procedural History**

On October 13, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 111). The Commissioner denied her application. ALJ Lantz McClain conducted the administrative hearing and found that the claimant was not disabled in a written opinion dated January 24, 2011. (Tr. 13-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1529(b) (Tr. 16). Due to mental impairments, the ALJ also found that the claimant should be limited to simple, repetitive tasks, could have only incidental contact with the general public, and should not be required to work as part of a team (Tr. 16). While the ALJ found that the claimant was not capable of returning to her past relevant work, the ALJ concluded that there was relevant work in the economy she could perform, *i. e.*, maid and laundry presser. (Tr. 23). Thus, the ALJ found that the claimant was not disabled (Tr. 23).

## Review

The claimant contends that the ALJ erred in the following ways: i) by failing to properly analyze the treating physician opinions of Dr. Robert Hensley, D.O. and Dr. Patrick Sullivan, respectively; and ii) by failing to properly analyze the opinion of state reviewing physician Dr. Sally Varghese, M.D. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly analyze the treating physician opinion of Dr. Hensley.

The claimant began receiving treatment for psoriasis and anxiety from Dr. Patrick Sullivan on March 13, 2009 (Tr. 210). At her visits, it was noted that she was suffering from bipolar disorder (202, 205, 207, 208), and her affect was frequently described as either anxious or manic (Tr. 201, 202, 206, 252, 253, 255, 256). Dr. Sullivan completed

a Mental Status Form on November 25, 2009, in which he stated that the claimant's mental status shows anxiety, mania, and depression and that the claimant would respond to work pressure, supervision, and coworkers "with difficulty" (Tr. 200).

The claimant began receiving treatment from Dr. Robert Hensley, D.O. on September 21, 2009 at which time Dr. Hensley performed a psychiatric assessment (Tr. 248). At that time, the claimant reported that she was having problems related to excessive energy, racing thoughts, irritability, impulsive spending, daily panic attacks, and insomnia (Tr. 248). The claimant also reported that she had been in a manic state since the beginning of the summer (Tr. 248). It was noted that the claimant had difficulty keeping a job, having gone through five jobs that year (Tr. 249). Dr. Hensley observed that the claimant had a depressed affect with tearful speech (Tr. 249). Following this initial assessment, the claimant began seeing Dr. Hensley on a monthly basis, and the following month, the claimant was still having problems with cycling between mania and depression, panic attacks, and anxiety (Tr. 247). In November 2009, the claimant reported that she "continues to be easily agitated and irritable" and that "people get on her nerves" (Tr. 246). In December 2009, the claimant reported that although her mood swings were less frequent, she continued to have problems with manic episodes with one such example being that she had taken a sledge hammer, took out her granite entryway, and laid hardwood floors by herself (Tr. 245).

Dr. Hensley completed a Mental Medical Source Statement on April 20, 2010 (Tr. 239-42). Dr. Hensley opined that the claimant was severely limited in the following

functional categories: i) ability to sustain an ordinary routine without special supervision; ii) ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; iii) ability to accept instructions and respond appropriately to criticism from supervisors; iv) ability to respond appropriately to changes in the work setting; v) ability to travel in unfamiliar places or use public transportation; and vi) ability to set realistic goals or make plans independently of others (Tr. 241). Dr. Hensley further opined that the claimant was markedly limited in the following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed instructions; iii) ability to maintain attention and concentration for extended periods; and iv) ability to sustain an ordinary routine without special supervision. Finally, Dr. Hensley found that the claimant was moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 240).

State reviewing physician Dr. Sally Varghese, M.D. completed a Psychiatric Review Technique on January 12, 2010 (Tr. 218-35). Based on a review of the claimant's medical records, Dr. Varghese found that the claimant suffered from a depressive syndrome characterized by decreased energy and feelings of guilt or worthlessness, manic syndrome characterized by pressures of speech and flight of ideas, and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (Tr. 221). In addition, Dr.

Varghese opined that the claimant exhibited anxiety and recurrent severe panic attacks at least once a week (Tr. 223). As such, Dr. Varghese found that the claimant had mild limitations in activities of daily living, moderate limitations in maintaining social functioning and maintaining concentration, persistence, and pace, and had experienced one or two episodes of decompensation (Tr. 228). Dr. Varghese also completed a Mental Residual Functional Capacity Assessment in which she found that the claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 232-33).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ stated that he was not giving controlling weight to Dr. Hensley's opinion because he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported" (Tr. 21). The ALJ also wrote that Dr. Hensley had not been treating the claimant for a lengthy period of time and Dr. Hensley's most recent records in relation to his opinion showed that the claimant was doing well (Tr. 21). The ALJ's analysis is flawed for several reasons. First, rejection of a treating physician's opinion based on a speculative conclusion that the opinion was based primarily on the claimant's subjective symptoms is error. *See*, *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on

claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original]. This is especially true when the opinion concerns mental impairments, as "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.") *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005) [unpublished opinion]. Next, the ALJ's statement that Dr. Hensley's records reflected that the claimant was "doing well" is clearly a case of the ALJ engaging in improper picking and choosing among the medical evidence. *See*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. In December, 2009, Dr. Hensley noted that the claimant's mood swings were better and she was less irritable, but that the claimant was still experiencing manic episodes (Tr. 245). The

following month, Dr. Hensley noted that the claimant continued to suffer with stress, depression, and anxiety, but that her manic episodes were better (Tr. 244). On the same day that he completed his Mental Medical Source Statement, Dr. Hensley's notes reflect that the claimant "continue[d] to have debilitating panic attacks" but that she did pretty well "as long as she's home and in her comfort zone" (Tr. 265).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Hensley's opinions. On remand, the ALJ should reconsider Dr. Hensley's opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma